**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ROSE MCCANTS, *et al.*,　　　　　　:
　　　　　　　　　　　　　　　　　:
　　Plaintiffs,　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
vs.　　　　　　　　　　　　　　　: CIVIL ACTION NO. 16-00546-B
　　　　　　　　　　　　　　　　　:
CITY OF MOBILE, *et al.*,　　　　:
　　　　　　　　　　　　　　　　　:
　　Defendants.　　　　　　　　　:

<u>ORDER</u>

This case is before the Court on Defendants the City of Mobile, Mobile Police Department, and Steven Chandler's Motions to Dismiss. (Docs. 14, 15, 16). These motions have been fully briefed and are ripe for resolution.[1] Upon consideration of all matters presented, the Court concludes, for the reasons stated herein, that Defendants' Motions to Dismiss (Docs. 14, 15) are **GRANTED.**

**I.　<u>Background Facts</u>**

Plaintiffs Rose McCants and Regina Greene commenced this action on November 1, 2016. (Doc. 1). In their complaint, Plaintiffs allege that on November 6, 2015, Plaintiff Regina Greene (hereinafter "Greene") was traveling on Highway 90 in Mobile, Alabama, when her car was struck from behind by James

---

[1]The parties consented to have the undersigned conduct any and all proceedings in this case. (Docs. 23, 24, 25).

Manning. (Doc. 1 ¶¶ 12-13). At the time of the accident, Greene's mother, Plaintiff Rose McCants (hereinafter "McCants"), was traveling in a separate car ahead of Greene. (Doc. 1 ¶¶ 12-13). Upon seeing the accident, McCants stopped her vehicle to check on Greene. (Id. at ¶ 14). The first emergency responder to arrive on the scene was Defendant Steven Chandler (hereinafter "Chandler"), a corporal with the Mobile Police Department. (Id. at ¶15).

According to Plaintiffs, Chandler "laughed and chatted" with James, the white male "at-fault driver," and "became very angry and screamed" at Greene and McCants, who are African-Americans. (Id. at ¶¶ 12, 16-18). Plaintiffs allege that Chandler punched McCants in the chest and that the force of the punch sent McCants off the median and into the lane of oncoming traffic. (Id. at ¶ 18). According to Greene, she begged Chandler not to hit her mother, but Chandler ignored her request and "screamed back at her to calm down." (Id. at ¶ 20).

Plaintiffs claim that Chandler forced Greene, "[t]hrough screaming and intimidation" to move from her seated position in the car and locate her purse in order to retrieve her license and insurance information. (Id. at ¶ 19). According to Plaintiffs, Greene is disabled from a previous neck injury, and this aggravated the injuries to her neck and spine. (Id.). Plaintiffs further contend that Greene was in extreme pain due

to the accident, and did not want to move until an ambulance arrived because she feared greater injury from movement. (Id.). Paramedics later arrived on the scene, and Greene was transported to Mobile Infirmary for treatment of her injuries. (Id. at ¶ 24). McCants was also treated at the hospital for the injuries she sustained as a result of being punched by Chandler. (Id. at ¶ 25).

Plaintiffs allege that Chandler initially filed a false police report, which placed Greene at fault, but later changed his report to correctly cite the other driver. (Id. at ¶ 22). Plaintiffs also allege that they contacted Internal Affairs to investigate the incident, and the response was "dismissive". (Id. ¶ 26).

According to Plaintiffs, Chandler's attitude, comments, and gestures towards them were racially based, and his treatment of the white, at-fault driver was dramatically different than his treatment of them. (Id. ¶ 22). Plaintiffs further allege that Chandler has a history of anger management problems and has been required to attend anger management in the past. (Id. at ¶ 21).

Plaintiffs assert eight separate claims for relief. (Id. at ¶¶ 46-187). Claim one is that Officer Chandler used excessive force against McCants in violation of the Fourth and Fourteenth Amendments. (Id. at ¶ 46-85). Claim two is that Officer Chandler used excessive force against Greene in violation of the

Fourth and Fourteenth Amendments. (Id. at ¶ 46-85). Claim three
is that Officer Chandler used excessive force against McCants
and that her race was a motivating factor in violation of the
equal protection afforded her under the Fourteenth Amendment and
42 U.S.C. § 1981 (Id. at ¶¶ 86-119). Claim four is that Officer
Chandler used excessive force against Greene and that her race
was a motivating factor in violation of the equal protection
afforded her under the Fourteenth Amendment and 42 U.S.C. § 1981
(Id. at ¶¶ 86-119). Claim five is that Officer Chandler
retaliated against McCants in violation of the First Amendment
for exercising her right to question law enforcement or engaging
in protected speech. (Id. at ¶¶ 120-153). Claim six is that
Officer Chandler retaliated against McCants in violation of the
First Amendment for exercising her right to question law
enforcement or engage in protected speech. (Id. at ¶¶ 120-153).
Claim seven is that the constitutional violations committed by
Officer Chandler against McCants were done pursuant to the
customs and practices of the City of Mobile (hereinafter "City")
and Mobile Police Department (hereinafter "MPD"), as these
Defendants have exhibited deliberate indifference to the
violation of constitutional and federal rights and have
encouraged, tolerated, and ratified the type of behavior
exhibited by Chandler by failing to conduct sufficient training
and failing to investigate or punish violations. (Id. at ¶ 27,

28, 29-30, 34, 37, 38, 154-187).  Claim eight is that the
constitutional violations committed by Officer Chandler against
Greene were done pursuant to the customs and practices of the
City and MPD, as these Defendants have exhibited deliberate
indifference to the violation of constitutional and federal
rights and have encouraged, tolerated, and ratified the type of
behavior exhibited by Chandler by failing to conduct sufficient
training and failing to investigate or punish violations.  (Id.
at ¶ 27, 28, 29-30, 34, 37, 38, 154-187).

## II. **Analysis**

    Pending before the Court are the motions to dismiss filed
by Defendants, the City, MPD, and Officer Chandler.  (Docs. 14,
15, 16).  In their motions, Defendants argue that MPD is not a
proper party to a § 1983 action, that Plaintiffs have not
properly plead a municipal liability claim against the City, and
that the remainder of the claims are due to be dismissed because
Plaintiffs have failed to properly plead cognizable claims under
§ 1983 and § 1981.  (Id.).  Defendant Chandler further argues
that he is entitled to qualified immunity.  (Docs. 15, 16).

    Plaintiffs filed a response in opposition and argue that
civil rights complaints should be construed liberally in favor
of plaintiffs at the motion to dismiss stage, that plaintiffs
are not held to a higher pleading standard in § 1983 actions,
and that Defendants are not entitled to qualified immunity.

(Doc. 22). In their replies, Defendants reiterate their arguments that Plaintiffs have failed to meet the requisite pleading standards, that Defendants have successfully carried their burden of demonstrating why the complaint fails to state a claim, and that Plaintiffs have failed to address a number of arguments raised in Defendants' motions to dismiss. (Docs. 26, 27).

The motions have been fully briefed and are now ready for resolution.

### A. Standard of Review

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and internal omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

When considering a motion to dismiss for failure to state a claim, the court must accept all allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff. Lopez v. Target Corp., 676 F. 3d 1230, 1232 (11th Cir. 2012). However, the court is not bound to accept as true "a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.; see also Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012)) ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations") (citations and internal quotations omitted).

The United States Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint

'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

### B. Claims Against MPD

Defendant MPD argues that it is not a proper legal entity that can be sued for the purposes of a § 1983 action. (Doc. 14 at 6). The capacity of a party such as MPD to be sued is determined "by the law of the state where the court is located." FED.R.CIV.P. 17(b).

In Alabama, a city's police department "is not a suable entity or a proper party under state law or for § 1983 purposes." Marks v. Selma City Police Dep't, 2014 U.S. Dist. LEXIS 134366, 2014 WL 4772658, *1 (S.D. Ala. 2014)(quoting Blunt v. Tomlinson, 2009 U.S. Dist. LEXIS 28187, 2009 WL 921093, *4 (S.D. Ala. Apr. 1, 2009)); see also Lee v. Wood, 2007 U.S. Dist. LEXIS 103024, 2007 WL 2460756, *7 (S.D. Ala. 2007)(holding that Mobile Police Department is not a suable entity under Alabama law); Hawkins v. City of Greenville, 101 F. Supp. 2d 1356, 1363 (M.D. Ala. 2000) (holding that Greenville Police Department is not a proper party or suable entity); Higginbotham v. City of Pleasant Grove, 2013 U.S. Dist. LEXIS 141566, 2013 WL 5519577, *6 (N.D. Ala. 2013) (holding that Pleasant Grove Police Department is not a suable entity and dismissing it with prejudice); accord Mann v. Hillsborough Cnty. Sheriff's Office,

946 F. Supp. 962, 970-71 (M.D. Fla. 1996) ("[T]he police department is the vehicle through which the city fulfills its policing functions[, and,] [t]herefore, the Florida courts have found that the city police department is not a legal entity and has no legal existence separate and apart from the city."); Eddy v. Miami, 715 F. Supp. 1553, 1556 (S.D. Fla. 1989) ("Where a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit."); Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (holding that an Alabama Sheriff's Department is not a suable entity because it lacks the capacity to be sued).

Inasmuch as the MPD is not a suable entity under Alabama law, Plaintiffs' claims against it are due to be dismissed.

## C. Plaintiffs' Claims Against Officer Chandler

Officer Chandler, who has been sued in his individual capacity, seeks the dismissal of Plaintiffs' claims against him and asserts the affirmative defense of qualified immunity. According to Officer Chandler, he is entitled to qualified immunity, as there is no case law that clearly defines the alleged conduct by him as rising to the level of any constitutional violations. (Doc. 16 at 20-21). The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual

capacities. Wilson v. Layne, 526 U.S. 603, 609 (1999). Officials are shielded insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." Cottone v. Jenne, II, 326 F. 3d 1352, 1357 (11th Cir. 2003). Once the government official satisfies this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. Id. at 1358.

Courts utilize a two-part framework to evaluate whether an official engaged in a discretionary act is entitled to qualified immunity. One inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002)(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right was 'clearly established.'" Barnett v. City of Florence, 409 Fed. Appx. 266, 270 (11th Cir. 2010)(citing Saucier, 533 U.S. at 201). Both elements of the two-prong test must be present for an official to lose qualified immunity, and the two-pronged analysis may be

done in whatever order is deemed appropriate for the case. Barnett, 409 Fed. Appx. 270 (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)).

In their complaint, Plaintiffs assert that, at the time of the encounter on November 6, 2015, Officer Chandler was acting in his capacity as a law enforcement officer employed by the MPD and/or the City of Mobile. Plaintiffs further assert that Officer Chandler was the first emergency responder on the scene. Officer Chandler asserts, and Plaintiffs' do not dispute, that Officer Chandler was acting within his discretionary authority during the events giving rise to the encounter with Plaintiffs; thus, the burden shifts to Plaintiffs to show that Officer Chandler is not entitled to qualified immunity. As noted, *supra*, the first step in this analysis is to determine whether Plaintiffs' allegations, if true, establish a constitutional violation. See Barnett, 409 Fed. Appx. at 270.

### 1. Excessive Force Claims

#### a. Regina Greene

Greene alleges that her rights under the Fourth and Fourteenth Amendments were violated by Officer Chandler's use of excessive force and that the use of force was objectively unreasonable in light of the facts and circumstances. (Doc. 1 at ¶¶ 51, 55, 71, 74). Officer Chandler responds that the complaint does not allege facts supporting a seizure and

that "any Fourth Amendment claim is therefore due to be dismissed for failing to state an actionable constitutional violation." (Doc. 14 at 10; Doc. 16 at 6-7).

While the Fourth Amendment guarantees citizens the right to be free from unreasonable searches and seizures, the mere fact that an interaction between law enforcement officers and a citizen occurred does not necessarily mean that a seizure has occurred. Touzin v. Patriarca, 2013 U.S. Dist. LEXIS 162435, *10-11, 2013 WL 6051062, *4 (S.D. Fla. Nov. 14, 2013)(citing United States v. Baker, 290 F. 3d 1276, 1277 (11th Cir. 2002) (additional citations omitted)). Eleventh Circuit jurisprudence has long identified three categories of encounters between citizens and police: (1) "police-citizen communications involving no coercion or detention," (2) "brief seizures or investigative detentions," and (3) "full-scale arrests." Gomez v. United States, 601 Fed. Appx. 841, 845 (11th Cir. 2015)(citing United States v. Hastamorir, 881 F. 2d 1551, 1556 (11th Cir. 1989)).

When the actions of the police do not show an unambiguous intent to restrain, a seizure occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that they were not free to leave. O'Boyle v. Thrasher, 638 Fed. Appx. 873, 877 (11th Cir. 2016)(citing Brendlin v. California, 551 U.S. 249, 255 (2007)). Stated

12

differently, for a seizure to occur, a person must not be free to disregard the police and go on about his or her business. West v. Davis, 767 F.3d 1063, 1069 (11th Cir. 2014)(citing California v. Hodari D., 499 U.S. 621, 628 (1991)). Further, a seizure only occurs when there is a governmental termination of freedom of movement through means intentionally applied. O'Boyle, 638 Fed. Appx. at 877 (citing West, 767 F. 3d at 1068). Courts consider "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." West, 767 F. 3d at 1074.

Greene does not allege, and nothing in the complaint suggests, that Officer Chandler inhibited Greene's freedom of movement. According to the complaint, Officer Chandler responded to the scene of Greene's traffic accident and screamed and yelled at Greene while directing that she retrieve her driver's license and insurance information from her purse. There is no allegation that Officer Chandler took any action to intentionally limit Greene's freedom of movement. See West, 767 F. 3d at 1068. Further, there is no allegation that Officer Chandler displayed a weapon or that he prevented her from

13

receiving medical treatment once paramedics arrived. To the contrary, Greene alleges that "[a]fter the incident made the basis of this lawsuit, paramedics arrived and [she] was transported to Mobile Infirmary for emergency treatment." (Doc. 1 at ¶ 24). These facts do not rise to the level of a seizure under the Fourth Amendment. Furthermore, *assuming arguendo* that Officer Chandler's actions did constitute a seizure, Greene has not alleged that Officer Chandler used any force against her, nor has she offered any facts suggesting that his request for her driver's license and insurance was unreasonable under the circumstances. See Graham v. Connor, 490 U.S. 386, 397 (1989)(Under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). Accordingly, taking as true the allegations contained in the complaint, Greene has failed to state an excessive force claim under the Fourth Amendment.

Greene also alleges that Officer Chandler's actions violated her Fourteenth Amendment right to bodily integrity and to be free from excessive force by law enforcement. (Doc. 1 at ¶¶ 53, 56, 57, 72, 75, 76). In his motion seeking dismissal, Officer Chandler argues that Greene has failed to establish a Fourteenth Amendment claim because she has failed to allege that

his actions "shock[ed] the conscience" or that he used force "maliciously or sadistically to cause harm." (Doc. 14 at 11; Doc. 16 at 11).

When analyzing a claim under the Fourteenth Amendment for a violation of a plaintiff's substantive due process, the question is whether or not the defendant's use of force "shocks the conscience." West, 767 F. 3d at 1067 (citing Fennell v. Gilstrap, 559 F. 3d 1212, 1217 (11th Cir. 2009)). This is a more onerous standard of proof than the analysis of excessive force under the Fourth Amendment. Id. The use of force "shocks the conscience" if it is applied "maliciously and sadistically to cause harm." Fennell, 559 F. 3d at 1217 (citing Hudson v. McMillian, 503 U.S. 1, 17 (1992) and Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008)). The type of "deliberate indifference" standard envisioned in custodial cases is different than that envisioned in cases where the object of the alleged excessive force is not in custody, as "the standard is sensibly employed only when actual deliberation is practical." County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998)(citing Whitley v. Albers, 475 U.S. 312, 320 (1986)). Conscience-shocking conduct "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability" and "the due process guarantee does not entail a

15

body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." Lewis, 523 U.S. at 847-48.

Indeed, in non-custodial circumstances, only a purpose to cause harm unrelated to the legitimate object of law enforcement satisfies the element of arbitrary conduct shocking to the conscience that is necessary for a due process violation. Daniel v. Hancock Cnty. School Dist., 626 Fed. Appx. 825, 830 (11th Cir. 2015) (unpublished)(citing Lewis, 523 U.S. at 836)(quotation marks omitted). The standard has been so narrowly interpreted and applied that even intentional wrongs seldom violate the due process clause. Daniel, 626 Fed. Appx. at 830 (citations omitted). Greene's allegations that Officer Chandler screamed and yelled at her and requested her license and insurance information fails to meet her burden of pleading an egregious intentional wrong. Thus, Greene's substantive due process claim against Officer Chandler must fail.

### b. Rose McCants

In the complaint, Plaintiffs allege that, following Regina Greene's accident, her mother, Rose McCants, who had been traveling in a car ahead of Greene, went to the accident scene to check on Greene. While there, McCants was punched in the chest by Officer Chandler. As a result, McCants fell off the median into the lane of traffic. Plaintiffs further allege

that, while at the hospital checking on Greene, McCants received medical attention for injuries sustained from Officer Chandler's punch.  (Doc. 1 at ¶¶ 12, 16-25).

A searching review of Plaintiffs' complaint does not reveal any allegations that suggest that Officer Chandler sought to question McCants, detain her, or that he said or did anything to suggest that McCants was not free to leave the accident scene. As a result, McCants has failed to state a seizure claim under the Fourth Amendment.  See O'Boyle, 638 Fed. Appx. 873 (llth Cir. 2016)(plaintiff's claim that the police chief grabbed his wrist and elbow in order to restrict or direct his physical movement and forcibly ejected him from the copy machine area does not show that the plaintiff was not free to walk away or end the encounter and proceed about his business; thus, he failed to establish a seizure claim under the Fourth Amendment).

McCants has also failed to state a claim under the Fourteenth Amendment because she has not alleged facts that "shock the conscience."  As noted, *supra*, the only mention of physical contact between Officer Chandler and Plaintiffs is the allegation that he punched Plaintiff McCants in the chest and that the force of that punch "sent the elderly Plaintiff [McCants] backwards off the median and into the lane of oncoming traffic."  (Id. at ¶ 18).  Force is conscience shocking under the Fourteenth Amendment only where it is used "maliciously and

sadistically to cause harm." Daniel, 626 Fed. Appx. at 831.

In Dacosta v. Nwachukwa, 304 F.3d 1045, 1047 (11th Cir. 2002), the Eleventh Circuit held that, where an instructor at a Georgia military college purposefully slammed a door in a student's face, then violently swung the door several times in an attempt to knock the student back from the door after her arm became lodged in the shattered glass, then reached through the cracked glass pane and shoved the student's face in an attempt to forcibly dislodge her arm from the glass pane, "such conduct, malicious as it may have been" did not amount to a federal constitutional violation. Id. at 1047. Also, in Daniel, 626 Fed. Appx. at 831, the Eleventh Circuit held that the officers' use of pepper spray for the purpose of handicapping a group of high school football players during their altercation with an opposing group of high school football players "while surely 'untoward, unfortunate and understandably upsetting[,]" did not state a substantive-due-process violation. Like Dacosta and Daniel, the conduct alleged in this case, punching an elderly plaintiff in the chest and causing her to fall into a lane of incoming traffic, while sad and disheartening, does not rise to the level of egregious, conscience-shocking conduct required under Fourteenth Amendment. Thus, McCant's substantive due process claim against Officer Chandler must fail.

## 2. First Amendment Claim

Although not the model of clarity, Plaintiffs appear to allege that they "exercised [their] constitutionally protected right to question law enforcement and/or engaged in protected speech related to the constitutional rights of citizens with respect to objectionable police conduct," and that a substantially motivating factor in Officer Chandler's use of excessive force against them was to retaliate for exercising their constitutional right to question his objectionable behavior. (Doc. 1 at ¶¶ 126, 127, 143, 144). Defendants respond that Plaintiffs have not pled a cognizable claim under the First Amendment because they have not established any constitutionally-protected speech that they engaged in that was the motivation for any allegedly retaliatory actions by Officer Chandler. (Doc. 14 at 15; Doc. 16 at 15).

The First Amendment protects the freedom of individuals verbally to oppose or challenge police action without risking arrest. Carr v. Cadeau, 658 Fed. Appx. 485, 489 (11th Cir. 2016) (citing City of Houston, Tex. v. Hill, 482 U.S. 451, 462-63 (1987))(additional citations and quotations omitted). The courts have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights. Carr, 658 Fed. Appx. at 489 (citing Bennett v. Hendrix, 423 F. 3d 1247, 1255 (11th Cir. 2005)). To state a First Amendment retaliation claim, a plaintiff "must establish

first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett, 423 F.3d at 1250. Plaintiffs' allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 662, 678. In other words, Plaintiffs must provide "a sequence of events from which one could . . . plausibly infer a retaliatory motive." Smith v. Florida Dep't of Corrections, 375 Fed. Appx. 905, 911 (11th Cir. 2010).

In their complaint, Plaintiff allege that Officer Chandler became very angry and screamed when he approached Greene's car; that he screamed at McCants and punched her in the chest; that he then resumed screaming at Greene and directed her to move from her seated position and retrieve her license and her insurance from her purse; and that Greene begged Officer Chandler not to hit her mom, but Officer Chandler ignored her and screamed back at her to calm down. (Doc. 1 at 5). Viewing these factual allegations in the light most favorable to Plaintiffs, Greene engaged in protected activity when she requested that Officer Chandler not hit her mom, and in response, he screamed at her to calm down. Taking these facts as true, they fail to establish "a sequence of events" from

which retaliation could be inferred.  Indeed, Plaintiffs do not identify any statements or actions by Greene or McCants that precipitated Officer Chandler's alleged striking of McCants, and they likewise fail to identify any retaliatory actions taken by Officer Chandler in response to McCants' plea.  Accordingly, their First Amendment claim must fail.

### 3. Racial Discrimination/Equal Protection Claims

Plaintiffs argue that they had the clearly established a statutory right to be free from racially motivated beatings and that their race was the motiving factor in Officer Chandler's decision to use excessive force.  (Doc. 1 at 22).  Plaintiffs also argue that Officer Chandler's "attitude, comments and gestures" toward both Green and McCants were "racially based." (Id. at 5). Plaintiffs further allege that Officer Chandler treated them differently than "the white, clearly at-fault driver" and that Officer Chandler initially prepared a false police report placing Greene at fault, but later, due to scrutiny of his report, changed the report and cited the at-fault driver even though no evidence had changed.

The purpose of the Equal Protection Clause of the Fourteenth Amendment is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Put succinctly, "the Equal Protection Clause requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006). Thus, to state a plausible claim for an equal protection violation, Plaintiffs must allege that "through state action, similarly situated persons have been treated disparately." *Bumpus v. Watts*, 448 Fed. Appx. 3, 5 (11th Cir. 2011). In this case, Plaintiffs have failed to do so. While Plaintiffs allege that the at-fault driver was white, there is no allegation that they were similarly situated, nor have Plaintiffs offered any facts which suggest such.

Conclusory and unsupported allegations simply do not rise to the level of a constitutional violation. *See*, *e.g.*, *Iqbal*, 556 U.S. 662, 681 (conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983). Further, the mere fact that Officer Chandler may have been rude or obnoxious is not sufficient to establish an equal protection violation. *Gordon v. Benson*, 2012 U.S. Dist. LEXIS 89247, *22, 2012 WL 2522290, *7 (W.D. Mich. June 28, 2012) ("The fact that Defendants treated Plaintiff poorly or unfairly is not, in itself, an equal-protection violation."). Therefore, Plaintiffs have failed to state a valid equal protection violation claim. Based on the foregoing,

all of Plaintiffs' claims against Officer Chandler must fail.

### D. Plaintiffs' Claims Against the City

Plaintiffs allege that the City "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violation of [Plaintiffs'] constitutional and federal rights" and "created and tolerated an atmosphere of lawlessness, and developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public." (Doc. 1 ¶¶ 164, 165, 181, 182). Plaintiffs further assert that that "[i]n light of the duties and responsibilities of those police officers that participate in law enforcement and preparation of police reports, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights," and the "deliberately indifferent training and supervision provided by Defendant City . . . resulted from a conscious or deliberate

23

choice to follow a course of action from among various alternatives available to the Defendant City . . . and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff." (Id. at ¶¶ 166, 167, 183, 184).

The City responds that Plaintiffs have not alleged plausible specific allegations demonstrating that the City had a need to train because of prior misconduct that was substantially similar to the conduct complained above here and that this is not the type of exceptional case where a constitutional violation is so predictable as to provide notice without repeated incidents. (Doc. 14 at 16).

In Monell v. Department of Soc. Servs. of New York, 436 U.S. 658, 691 (1978), the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior. In other words, "a municipality cannot be held liable *solely* because it employs a tortfeasor." Id. Instead, a municipality may be held accountable in damages for the conduct of a particular governmental actor only when the plaintiff shows that the execution of the municipality's official "policy" or "custom" effectively was the cause of the complained of injury. Id. at 694. Thus, "[t]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality

had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." T.W. ex rel. Wilson v. School Bd. of Seminole Cnty., 610 F.3d 588, 603 (11th Cir. 2010)(quoting McDowell v. Brown, 392 F. 3d 1283, 1289 (11th Cir. 2004)). Plaintiffs' allegations are insufficient to establish this claim. Therefore, Plaintiffs' claims against the City must fail.

### III. Conclusion

Based on the foregoing, Defendants' Motions to Dismiss Plaintiffs' Complaint are **GRANTED**. It is **ORDERED** that all of Plaintiffs' claims are **DISMISSED** with prejudice.

**DONE** this **29**th day of **September, 2017.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**